# Nichols v. Commonwealth.

June 16, 1942.

C. A. Noble and J. H. Asher for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Aaron Nichols, a boy 21 years of age, was charged with the crime of willfully murdering Mabel Turner, a girl some 10 years of age, by driving his automobile against her in a reckless and wanton manner. Upon his trial he was found guilty of voluntary manslaughter and his punishment fixed at 10 years in the Reformatory. He is urging that the judgment upon the verdict be reversed, because (1) the court admitted incompetent and prejudicial evidence; (2) the court rejected competent and relevant evidence; and (3) the Commonwealth's attorney was guilty of improper conduct in his argument to the jury.

Nichols, with two boys of about his own age, had been driving around the town of Combs for two or three hours before he ran over the Turner girl on a curve near the school building during the noon hour. He had driven through the town on two or three occasions. The Commonwealth presented evidence to the effect that Nichols had been driving his car in a careless and reckless manner and at a high rate of speed some 10 to 20 minutes before the accident and that he was driving at a high rate of speed at the time of the accident. Nichols testified that something went wrong with his car; that he became unduly excited; that he was seized with one of the spells or fits, which he was accustomed to have; and that he remembered nothing until after the accident.

The first bit of evidence toward which complaint is directed is that Evelyn Feltner, who was with the Turner girl, was also struck. We fail to see the basis for this complaint because the record shows conclusively that the two young girls were walking along the road hand in hand, at the time Nichols' car ran into them, injuring one and killing the other.

The evidence most severely attacked is that relating to the manner in which Nichols was said to have been driving the car through Combs some 10 to 20 minutes before the accident. As indicated above, there is testimony that he was driving the car at a high rate of speed, some 30 to 40 miles an hour; and also that he zig-zagged it across the road, and on one occasion swerved it toward a boy on a bicycle. The cases of Elkins v. Commonwealth, 244 Ky. 583, 51 S. W. (2d) 916, and Stevens v. Potter, 209 Ky. 705, 273 S. W. 470, are cited in support of the proposition that evidence as to the manner in which an automobile was being operated some period of time before an accident has no relevancy as to the manner in which it was being driven at the time of the accident. Both of those cases involved the competency of evidence as to the rate of speed the car was being driven. In the Elkins case it was held that it was error to admit testimony as to the manner in which the car was being driven in Jackson an hour or more before the collision took place out on the highway. In the Stevens case it was held that evidence as to the rate of speed of a car, judged by witnesses some 400 yards from the point of collision, had no relevancy to the rate of speed the car was being driven at the point of the accident. The Com-

monwealth insists, on the other hand, that the evidence under attack is competent when measured by the opinion in the case of Largent v. Commonwealth, 265 Ky. 598, 97 S. W. (2d) 538. There, evidence was admitted as to the rate of speed and the manner in which a car was being driven some 500 or 600 feet distant from the place where the collision occurred. In the Largent case, as in this one, there was a charge of reckless and wanton driving of a car. As said in the Largent case, while the driving of a car at an excessive speed may be a factor in the offense of reckless driving, it is not a necessary nor a distinguishing element of the offense. The Commonwealth contends that, under a charge such as the one at bar, the evidence may take a wider range than in those cases involving only the element of speed, because, it is proper to show the acts of the driver and the circumstances surrounding the manner and method in which the car is being operated, and, we might add, the apparent attitude or state of mind of the driver as shown by his conduct in operating the vehicle. The question is a nice one, but we pass it because, on the whole case, we are convinced that the evidence was competent in view of the peculiar character of Nichols'. defense, to the effect that he had no mind at the time of the accident.

He testified, as did his father and mother, that he had had fits for a number of years due to a lick he received on his head when a small child. He said that he did not know when these spells were coming upon him and that when he came out of one of them he had no recollection of what had happened. We have noted that he said that something went wrong with the car, that he became unduly excited, was seized with an attack and that he had no recollection of the car striking the girls. Unquestionably, the evidence as to the manner in which he had been operating his car through the town of Combs some 10 to 20 minutes before the accident would have been competent to rebut his testimony to the effect that he had been operating his car at a reasonable rate of speed and in a prudent manner, and as to his version of the accident, because the same character of negligent acts was involved at that time as at the time of the accident, according to the Commonwealth's testimony. This being true, we fail to see, on the whole case, how the introduction of the evidence in chief was prejudicial to Nichols' substantial rights. Evidence is either competent or incompetent, though certain fundamental rules

as to its introduction must be observed; and Nichols' testimony as to the unusual manner in which the accident occurred justified the Commonwealth in attempting to get before the jury evidence as to the manner in which he had been operating his car in Combs just prior to the accident.

It is insisted that it was error to exclude the following testimony offered by Nichols:

"I have them fits and all I remember is that when I come to I am wet with sweat and trembling—that's all I know about it," and "I come to one time and blood was dripping off my elbow and my underwear was bloody and they took six stitches in my head; I have the stitches to prove it."

The witness had already said that he had had spells two or three times a month for as long as he could remember, and in response to the question of how they affected him, he said, "I don't know what I am doing—not one thing," and also:

"When I come to, I don't know much more than I did before that; I just know I am trembling all over and wet with sweat—that's all I know."

Clearly, the rejection of the evidence in question was not error. The record shows that Nichols got his theory of the accident before the jury, and, as a matter of fact, he had already testified to practically everything in his avowal except as to the injury he received on his head on one occasion.

The statements of the Commonwealth's attorney to which complaint is directed are:

"Gentlemen of the jury: The indictment charges the defendant with the crime of willful murder, and he would be getting off lightly with 21 years." And "Gentlemen of the Jury: A bad verdict is worse than no verdict; as long as you have a man indicted you have a club over his head."

As to the first statement, the court admonished the jury that it would be governed by the instructions in the case, and he sustained the objection to the last clause in the second statement, namely, "* * * as long as you have a man indicted you have a club over his head." We do not think that the remarks toward which complaint is directed, when viewed in the light of the actions of the

trial court, can be said to have been prejudicial to Nichols' substantial rights; notwithstanding our belief that such arguments hardly come within the class to be considered as commendable.

Judgment affirmed.